IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DAMON WALKER,

    *Plaintiff,*

vs.

ANSWER TOPEKA, INC.,

    *Defendant.*

Case No. 20-02049-EFM

**MEMORANDUM AND ORDER**

Plaintiff Damon Walker brings claims against Defendant Answer Topeka, Inc. ("Answer Topeka") for racial discrimination and harassment, sex discrimination and harassment, and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), as well as claims of racial discrimination and retaliation under 42 U.S.C. § 1981. Answer Topeka has filed a Motion to Dismiss (Doc. 6). It contends that Walker has failed to exhaust administrative remedies under Title VII for racial discrimination and harassment and that he fails to state a claim on which relief can be granted for all other claims. For the reasons stated in more detail below, the Court grants the motion in part and denies it in part.

## I.      Factual and Procedural Background[1]

Walker, an African-American man, began working for Answer Topeka on August 27, 2018, as a full-time customer service representative. His primary duties were taking calls and messages related to various businesses. Until the day of his termination, he received favorable performance reviews throughout his employment with Answer Topeka.

At the time Walker was hired, his supervisor Danielle Hull told him that he would be paid $14 per hour; however, initially his pay was only $11 per hour. In August 2019, his pay was increased to $14 per hour as promised. He was aware of another female customer service representative that was paid $14 per hour.

During his time at Answer Topeka, Walker alleges he endured harassing comments and conduct by his coworkers on account of his race and sex. As an example, he alleges that on February 9, 2019, one of his white female coworkers, Joyce Rivera, in response to a "discussion about professionalism," told him to "kiss her m*****f*****g *ss."[2] Rivera then left early from her shift that day. Walker complained to Hull, Answer Topeka owner Craig Woodbury, and Operations Manager Lori (last name unknown) regarding this abuse. However, Rivera was never terminated for her behavior.

In July 2019, a different white female coworker named Megan also left her shift early when Walker confronted her about placing calls on hold. Walker complained via text to Hull about Megan's actions, but Megan was not fired. Instead, Hull responded to Walker via text, telling him to "stop playing the race card."[3]

---

[1] The facts are taken from Walker's Complaint and are accepted as true for the purposes of this ruling.

[2] Doc. 1, at 3.

[3] Doc. 1, at 3.

After this incident, Walker met with Woodbury and Lori to discuss his complaints of discrimination. He told them that he was being held to a different standard in the workplace than his white female coworkers. Woodbury acknowledged these complaints but took no substantive action in response.

In September 2019, Walker requested to be taken from a full-time schedule to a part-time one because he found the workplace so hostile. Answer Topeka then reduced his work time to as little as two days a week. Walker asked that his schedule not be reduced so significantly, but thereafter he was generally kept to two days a week. While he alleges his work time was usually around 20 hours a week, he was aware that other female part-time employees were being scheduled for more than 20 hours a week.

On November 18, 2019, Walker found himself experiencing anxiety while he was at work. He attributes this anxiety to the hostile environment in which he worked. "Pursuant to the policy all other employees followed,"[4] Walker told Hull he was going to go home early and subsequently left for the day. However, the following day, Woodbury fired Walker for leaving work early on November 18. Answer Topeka says that Walker clocked out of his shift early without authorization, but Walker alleges that he followed the same process that his white female coworkers had followed in the past without getting in trouble. Walker alleges that "Defendant did not follow its own policies and procedures, with respect to Plaintiff's termination"[5] but does not elaborate on what these policies and procedures are.

---

[4] Doc. 1, at 4.

[5] Doc. 1, at 4.

Walker maintains that his work was more closely scrutinized than his coworkers' during his employment, and he was not provided the same assistance that other employees received. As a result of his being fired, he has experienced emotional distress and a loss of the health benefits provided by his former employer.

On November 29, 2019, Walker filed a Charge of Discrimination ("COD") with the Equal Employment Opportunity Commission ("EEOC").[6] In the COD, Walker checked the boxes indicating he had discrimination claims based on sex, retaliation, and "other (specify)," though Walker does not allege what other discrimination he faced in the COD. The box for racial discrimination was left unchecked. In the "particulars" section of the COD, Walker indicated that Hull and Marsha Banks were his direct supervisors. He alleged several instances of sex discrimination, including his encounter with Rivera, his alleged disparate pay, his drastic reduction in hours following his transition to part-time, and the circumstances of his termination. He indicated that he believed his termination was due to sex discrimination and retaliation for his complaints to management about his experience in the workplace.

On December 10, 2019, Walker received a right to sue letter from the EEOC.[7] The EEOC indicated that it was closing the file on his charge because "[b]ased upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge." The EEOC also

---

[6] Doc. 1, at Ex. A.

[7] Doc. 1, at Ex. B.

stated that Walker had the right to sue Answer Topeka regarding the charges he filed in his COD. In compliance with this Dismissal and Notice of Rights, Walker filed suit shortly afterward.

## II. Legal Standard

Under Rule 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[8] Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.' "[9] A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[10] The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well the grounds on which each claim rests.[11] Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[12] Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[13] If the allegations in the

---

[8] Fed. R. Civ. P. 12(b)(6).

[9] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[10] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[11] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[12] *Iqbal*, 556 U.S. at 678–79.

[13] *See id.* ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (citation omitted)).

complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.' "[14]

### III.   Analysis

### A.   Title VII Racial Discrimination and Harassment

Answer Topeka asks the Court to dismiss Walker's claim under Title VII for racial discrimination and harassment, arguing that Walker failed to exhaust all administrative remedies afforded by Title VII before filing suit. In the Tenth Circuit, failure by the plaintiff to file an EEOC charge regarding a certain instance of discrimination is an affirmative defense that defendants can raise to ask the Court to dismiss a claim.[15] Consequently, failure to exhaust administrative remedy is grounds for dismissal under a Rule 12(b)(6) analysis.[16] In a case where a plaintiff does file a COD to the EEOC but does not check the boxes for all areas of discrimination for which he seeks a remedy, the Court presumes that conduct regarding all unchecked boxes is not part of the claim.[17] However, that presumption can be rebutted if the text of the COD clearly sets forth the basis of the unchecked claim.[18] Administrative remedies are considered exhausted as to all incidents that can be reasonably expected to follow the COD.[19]

Thus, the Court's analysis of this issue examines whether Walker's claim of racial discrimination and harassment reasonably follows from the overall context of the facts alleged in

---

[14] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

[15] *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1185 (10th Cir. 2018).

[16] *Khalifah v. Brennan*, 2020 WL 1028299, at *2 (D. Kan. 2020) (citing *Lincoln*, 900 F.3d at 1183).

[17] *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007) (citing *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1260 (10th Cir. 1998)).

[18] *Id.*

[19] *Id.*

the COD, notwithstanding the unchecked racial discrimination box. The Court concludes that nothing in the text of Walker's COD indicates a desire to seek administrative remedy for his racial discrimination claim. Consequently, a claim of racial discrimination and harassment does not reasonably follow from the COD.

The Court's inquiry into a COD is "limited to the scope of the administrative investigation that can reasonably be expected to follow from the discriminatory *acts* alleged in the administrative charge. In other words, the charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim."[20] An investigation cannot reasonably be expected to follow from a certain type of discrimination if there are not sufficient facts alleged that indicate such discrimination took place.[21]

Walker's COD appears uniquely tailored to address his claims regarding sex-based discrimination and retaliation. Throughout the COD, Walker takes care to note that his supervisors and coworkers with whom he had issues were all female but makes no mention of their race. His allegation regarding pay mentions only that he believes he was paid less than similarly situated female employees. His allegation regarding work hours similarly only mentions the sex of his coworkers. His allegation that he was fired for doing the same thing that other employees had been allowed to do also only mentions the sex of his similarly situated coworkers. Nowhere in the COD does Walker note his own race or the race of any of the people with whom he takes issue.

Finally, regarding Rivera's explicit language toward Walker, while the Court notes its vulgarity, the phrase is not by itself discriminatory. The phrase makes no mention of the race or

---

[20] *Jones*, 502 F.3d at 1186.

[21] *Id.*

sex of the person speaking or being spoken to.  It could be said with equal effect by an individual of any race or sex to another individual of any race or sex.  As such, it too does not indicate that Walker intended to raise a claim of racial discrimination with this COD.  Even if Rivera had used racially discriminatory language, however, her actions would not bolster Walker's claim against Answer Topeka.  The Supreme Court has held that "an employer may be vicariously liable for an employee's unlawful harassment only when the employer has empowered that employee to take tangible employment actions against the victim, *i.e.*, to effect a significant change in employment status."[22]  Walker alleges no facts indicating that Rivera had any authority to change his employment status; she was merely his coworker.  As such, Answer Topeka cannot be liable for her actions in this instance.

Walker maintains that if the investigator had looked into the people about whom Walker complained, he would have found that all the people at issue were white.  That may be true, but it is not the responsibility of the EEOC investigator to generate new Title VII discrimination claims on his own based on types of discrimination not alleged in the facts.[23]  Walker never indicated in the text of his COD that he intended to bring a complaint for more than sex-based discrimination and retaliation.  As a result, Walker cannot bring suit for a Title VII racial discrimination and harassment claim because he did not exhaust all administrative remedies first.

---

[22] *Vance v. Ball State Univ.*, 570 U.S. 421, 431 (2013) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (quotation marks omitted)).

[23] Kristine Cordier Karnezis, J.D., Annotation, *Sufficiency of Contents of Notice to Equal Employment Opportunity Commission Charging Violation of Age Discrimination in Employment Act*, 27 A.L.R. Fed. 2d 367 (2008) ("[B]ecause facts alleged in her complaint related to race, investigation reasonably expected to grow out of that charge would not encompass retaliation, gender discrimination, or age discrimination.").

**B.     Title VII Sex Discrimination and Harassment**

Walker alleges that Answer Topeka subjected him to discrimination and harassment on account of his sex. In a discrimination case under Title VII, under the Supreme Court's analysis first applied in *McDonnell Douglas Corp. v. Green*,[24] a plaintiff must establish a prima facie case of discrimination to survive dismissal.[25] To establish this, a plaintiff must show that (1) he is a member of a protected class, (2) that he was qualified for the position at issue, (3) that he suffered adverse employment action, and (4) that this action was not done to similarly situated employees that are not members of that protected class.[26] However, if a plaintiff claims a reverse discrimination claim—that is, a claim for discrimination against a member of a class not historically subjected to discrimination—he is not automatically entitled to rely on the *McDonnell Douglas* burden-shifting framework just because he alleges that he suffered adverse employment action when equally qualified members of other classes did not.[27] Even so, if he can produce facts that support a reasonable inference that "but for" the plaintiff's status he would not have suffered the alleged adverse employment action, he can still make a prima facie case for discrimination.[28] Alternatively, a plaintiff claiming reverse discrimination can still rely on the *McDonnell Douglas* burden-shifting framework if he alleges background circumstances that support an inference that

---

[24] 411 U.S. 792 (1973).

[25] *Id.* at 802.

[26] *See Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1201 (10th Cir. 2006).

[27] *Notari v. Denver Water Dep't*, 971 F.2d 585, 589 (10th Cir.1992)

[28] *Id.* at 590.

the defendant is one of those "unusual employers who discriminates against the majority" in addition to claiming to be a member of a protected class.[29]

Although Walker alleges background circumstances partially supporting the claim that Answer Topeka discriminates against men—for instance, that most of his supervisors are women—those factors are ultimately irrelevant to the Court's decision because Walker alleges enough facts to plausibly indicate that but for his sex, he would not have been fired. He draws clear distinctions between the treatment of his female coworkers by Answer Topeka and his own treatment. While the Tenth Circuit has found that a single instance of disparate treatment is insufficient to establish "but for" causation,[30] here Walker brings up several instances of his female coworkers engaging in the same activity that got him fired. Meanwhile, Walker alleges that no disciplinary action was brought against either of his female coworkers in spite of Walker's complaints to his superiors about their behavior. Just one incident of disparate treatment would not be sufficient, but Walker alleges two incidents of disparate treatment, indicating a pattern of disparate treatment that creates a plausible belief that but for Walker's sex, he would have been treated the same as his female coworkers, i.e., would not have been terminated for the first offense of leaving work early. As a result, the Court concludes that Walker has adequately made a prima facie case for sex discrimination under Title VII. Accordingly, this claim will not be dismissed.

### C.     Title VII Retaliation

Walker also alleges that Answer Topeka retaliated against him in response to his complaints to his superiors regarding discriminatory treatment he faced while working at Answer

---

[29] *Argo*, 452 F.3d at 1201 (citing *Notari*, 971 F.2d at 589).

[30] *Notari,* 970 F.2d at 590.

Topeka. The elements of a retaliation claim under Title VII require that (1) the plaintiff engaged in protected opposition to discrimination, (2) he would have found the challenged action materially adverse, and (3) a causal connection existed between the protected activity and the materially adverse action.[31] These requirements do not change even if one is alleging reverse discrimination.[32] However, the scope of a Title VII retaliation claim is limited to the claims included in the COD or claims that necessarily could have been expected to come within the scope of an investigation into the COD.[33] Here, Walker fails to allege sufficient facts to meet the elements of a retaliation claim.

Because the retaliation claim is limited to claims included in the COD, Walker's retaliation claim can only pertain to sex discrimination, not racial discrimination. As stated above, any retaliation he faced as a result of complaints made about racial discrimination is not within the Court's authority to address as Walker has not exhausted his administrative remedies for such claims.

In regard to Walker's claim of retaliation for protected opposition to sex discrimination, the Court concludes that because Walker alleges nothing in his conversations with his superiors that related to sex discrimination particularly, the Court cannot find that Walker ever suffered retaliation for complaining about sex discrimination specifically. Walker alleges that he complained to Hull about his treatment by his coworkers, but he alleges nothing to indicate that he complained about sex discrimination in particular in this conversation. As a result, the Court cannot find that Walker complained about sex discrimination to Hull. Regarding his subsequent

---

[31] *Argo*, 452 F.3d at 1202 (citation omitted).

[32] *Id.*

[33] *Dozier-Nix v. D.C.*, 851 F. Supp.2d 163, 168 (D.D.C. 2012).

meeting with Woodbury and Lori, Walker does not allege anything about the contents of this meeting outside of Woodbury's acknowledgment of the complaints. Nothing in the alleged facts indicates that Walker complained about sex discrimination at this time either. Without any facts plausibly indicating that Walker complained to his superiors specifically about sex discrimination, the Court cannot conclude that Walker engaged in any protected action related to sex discrimination. As a result, Walker's Title VII claim for retaliation fails to meet the first element and is therefore dismissed.

### D.     42 U.S.C. § 1981 Racial Discrimination

Regarding the 42 U.S.C. § 1981 claim for racial discrimination, Walker alleges numerous facts that, if true, plausibly indicate that he was discriminated against for his race. 42 U.S.C. § 1981 uses the same *McDonnell Douglas* framework used for Title VII discrimination and retaliation cases, so the same elements must be met to establish a prima facie case.[34] Accordingly, for his discrimination claim, Walker must show that (1) he is a member of a protected class, (2) that he was qualified for the position at issue, (3) that he suffered adverse employment action, and (4) that this action was not done to similarly situated employees that are not members of that protected class.[35]

The first three elements are easily met. The first is met by Walker's assertion that he is black. Race is a protected class under Title VII, and his minority status means he is a member of that protected class.[36] The second is met by Walker's allegation that during the course of his

---

[34] *Perry v. Woodward*, 199 F.3d 1126, 1135 (10th Cir. 1999).

[35] *See Argo*, 452 F.3d at 1201.

[36] 42 U.S.C. § 2000e-2(a)(1).

employment, he received no disciplinary actions until he was terminated, indicating he was otherwise able and qualified for the job he performed.[37] The third element is met by his allegation that he was fired. Termination is clearly an adverse employment action.[38]

Walker also meets the fourth element. He does this by first alleging the improper behavior exhibited by his white female coworkers who were also customer service representatives, then alleging that while they had no disciplinary action brought against them for their behavior, he was fired for substantially similar behavior. He alleges that a coworker used crude language to dismiss him when he addressed her professionalism, then she left work early that day with apparent impunity. Another coworker also left work early when Walker confronted her about placing calls on hold. Walker complained to his supervisor about the behavior of both women, but no action was taken in either instance. Instead, Walker was told to "stop playing the race card" by his supervisor Hull. This comment suggests that Walker's race was a topic of conversation, or at least that Hull not only took note of Walker's race, but also viewed it as a reason to disregard his complaints. Hull's response to these complaints indicates that Walker's superiors at Answer Topeka regarded him differently from his coworkers on a racial level. In other words, where a white employee likely would not be told to "stop playing the race card" if he complained about how he was treated by other white coworkers, Walker was told just that. This indicates that Walker's race is a factor in how he was allegedly treated differently from his coworkers. The

---

[37] *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1193–94 (10th Cir. 2000) (stating that an employee satisfies his or her prima facie burden of showing qualification by presenting some credible evidence that he or she possesses the objective qualifications necessary to perform the job).

[38] *Daniels v. United Parcel Service, Inc.*, 701 F.3d 620, 635 (10th Cir. 2012).

allegation of racially charged language like this supports Walker's claim that his race was used to distinguish him from his coworkers in terms of how management treated him.

Meanwhile, the action that allegedly got Walker fired is substantially similar to the actions of these women. He alleges that in the midst of anxiety due to the high-stress environment Walker had to work in, he informed Hull that he intended to leave early. While he does not allege whether she actually gave him verbal approval or not, that does not matter for the purposes of comparing it to the actions of his white female coworkers, since they are not alleged to have received approval either. As a result, this indicates that though Answer Topeka is willing to take harsh disciplinary action against Walker, a black man, for leaving work early, it will not do so against white female employees for substantially similar conduct. Coupled with his allegation of a sterling disciplinary record before this occasion, he draws a clear distinction between the treatment of his similarly situated white female coworkers and himself. He therefore meets the fourth element. Since Walker meets all four elements of a facially plausible § 1981 claim, the Court will not grant dismissal.

### E.     42 U.S.C. § 1981 Retaliation

Walker also alleges that Answer Topeka retaliated against him in response to his complaints to his superiors regarding discriminatory treatment he faced while working at Answer Topeka. As mentioned previously, 42 U.S.C. § 1981 uses the same *McDonnell Douglas* framework used for Title VII discrimination and retaliation cases, so the same elements must be met to establish a prima facie case.[39] Therefore, the elements of a retaliation claim under 42 U.S.C. § 1981 require that (1) the plaintiff engaged in protected opposition to discrimination, (2) he would

---

[39] *Perry*, 199 F.3d at 1135.

have found the challenged action materially adverse, and (3) a causal connection existed between the protected activity and the materially adverse action.[40] These requirements do not change even if one is alleging reverse discrimination.[41] Here, Walker meets the elements of a retaliation claim.

Walker alleges that he complained to his supervisor Hull about his coworker Megan leaving work early, only to be told in response to "stop playing the race card." He had a subsequent meeting with Woodbury and Lori to discuss his complaints of discrimination. These meetings with his superiors regarding his discrimination complaints constitute protected action under 42 U.S.C. § 1981 and handily meet the first element. Likewise, the second element is also easily met. The challenged action in this case is termination from employment, which any reasonable person would find materially adverse.

The last element, causal connection, is less clear. Where there is a close temporal relationship between the protected act and the materially adverse employment action, causal connection can be assumed.[42] However, here it would be a stretch to consider the protected action and Walker's termination temporally close. "It appears clear that, if the adverse action occurs in a brief period up to one and a half months after the protected activity, temporal proximity alone will be sufficient to establish the requisite causal inference; but it is equally patent that if the adverse action occurs three months out and beyond from the protected activity, then the action's timing alone will not be sufficient to establish the causation element."[43] Walker complained to

---

[40] *Argo*, 452 F.3d at 1202 (citation omitted).

[41] *Id.*

[42] *Id.*

[43] *Conroy v. Vilsack*, 707 F.3d, 1163, 1181 (10th Cir. 2013) (citing *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999)).

Woodbury and Lori sometime around July 2019, but he was not fired until November 19, 2019. An approximately four month gap is too long to assume causation from temporal closeness.

However, the events that took place between those dates suggest that this was the beginning of a deteriorating relationship between Walker and Answer Topeka. In September 2019, about two months after Walker's complaints to his superiors, in response to a request to be taken to a part-time schedule, Answer Topeka significantly reduced Walker's work time to around two days a week. Even after Walker complained about this significant reduction of work hours and was promised those hours would be extended, he was kept at about the same number of hours per week. This insistence on Answer Topeka's part on keeping Walker at low hours despite his request to the contrary suggests that it was seeking to distance itself from Walker as much as it could. In light of this broader context, it is plausible that Answer Topeka was looking for an excuse to do away with Walker entirely after he complained about discrimination. "When retaliation for an act occurs well after the act, one wonders why the retaliator failed to act sooner."[44] In this case, the intervening events that indicate a buildup toward the alleged retaliatory action plausibly suggest that Answer Topeka may have been waiting for Walker to do something that could provide a pretextual excuse for termination. For this reason, the Court will not dismiss Walker's claim for retaliation under 42 U.S.C. § 1981 at this time.

---

[44] *Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1217 (10th Cir. 2003).

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss (Doc. 6) is **GRANTED IN PART, DENIED IN PART.** The motion is granted for Count I and Count III but denied for all other counts.

**IT IS SO ORDERED.**

Dated this 21st day of July, 2020.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE